The next case this morning is 523-0245, People v. Houston. Arguing for the appellant is Levi Harris. Arguing for the appellee is Jessica Theoratos. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counselors. Good morning. We've read your briefs, we're familiar with the facts of the case, so Ms. Theoratos, are you ready to proceed? I'm the plaintiff. Sorry, you are the plaintiff's son. Mr. Harris, you're ready to proceed. Yes, Your Honor. I apologize for the mix-up there. You may do so. That's all right. Switch it up. We got to be ready to roll with the punches. Your Honors, I am Assistant Defender Levi Harris. I'm here this morning on behalf of my client, the appellant, Lemuel Houston. May it please the court. So, 11 and a half years after he was sentenced following an open guilty plea, Lemuel Houston is finally getting his day in this court for his direct appeal. Lemuel's 53-year sentence is excessive in light of four particular things. His intellectual disability, which gives him the cognitive level of an 8-year-old, his capacity to learn in spite of that disability, his decision to enter an open guilty plea and take responsibility for the crime he committed, and his minimal criminal history before this case. Accordingly, this court should either reduce his sentence or remand for resentencing. Initially, let's talk about the general principles of law. We know that even with the understanding that the trial court's decision as to sentencing is entitled to great deference, and even where a sentence falls within the statutory limits, it can still be an abuse of discretion to impose a sentence that's greatly at variance with the spirit and the purpose of the law. And in cases where such a variance exists with the spirit and the purpose of the law, this court has the authority and even the duty to either reduce the sentence or remand for resentencing for the imposition of a sentence that is just. Specifically to this case and to my client Lemuel Houston, first of all, the trial court gave inadequate weight to his intellectual disability, which according to Dr. Cuneo's report as to Lemuel's fitness, described him as having the cognitive level of an 8-year-old. In the portion of the transcript where the trial court discussed this, it noted that Lemuel knew right from wrong and that sanity was not an issue. But that misses the point that, you know, sanity is not the same as whether someone is intellectually disabled. The court said, well, you know, Mr. Houston, if you knew right from wrong, you knew that what you did in this case was wrong, and so the argument the state makes that you are a danger to society, I find to be accurate. So here, let me stop you for a second. Our timer doesn't seem to be moving. Perfect. There we go. Okay. So the court, you know, on the basis that he knew right from wrong, the court said that it agreed with the state that Lemuel was a danger to society. Well, even if knowing right from wrong were what was at stake as to Lemuel's intellectual disability, ostensibly knowing right from wrong would make or should make somebody more amenable to rehabilitation, more teachable, and therefore less of a danger to society. But the point, again, and the court paid lip service to it, you know, I mean, by the time that, I think there were about three years between the crime and the sentencing. So by the time of sentencing, everybody in the court obviously knew that Mr. Euston had some disability. But our argument as to this particular factor was that inadequate weight was given to this where, you know, again, my client has the capacity, the intellectual capacity of an eight-year-old. We talked about this a little bit in briefing, but, you know, we know the Illinois Supreme Court has taught us that there's not, we can't just say, okay, well, there's an eight-year-old in this man's body, therefore, let's treat him legally like an eight-year-old and give him Miller protections the way that we would with somebody who was chronologically an eight-year-old. But at the same time, we're not able to look at somebody who has that intellectual capacity and just look at their physicality and treat them exactly the same under the law as we would somebody who had, you know, what we would say is normal intellectual functioning. So that's the first issue, that the court didn't give adequate weight to that. The second thing, which the court didn't mention at all, was that Lemuel, even given that disability, had the capacity to learn and grow. And because he had that disability, we have some educational records in this record where he had teachers, and I don't understand all of how it works, but they had these IEP meetings where teachers and other professionals in the school system will meet and will talk about the plans for particular students, and Lemuel was one of those students. And one of those reports said that, you know, when he was exposed to a greater vocabulary, when he had this, not necessarily one-on-one, but when he had teachers who would really work with him and give him the tools that he needed, he had a capacity to learn, to show improvement, and things like that. So he wasn't completely unteachable, he wasn't completely impervious to growth, even given his disability. And this was something that the court didn't mention in sentencing at all. You know, obviously, in the Department of Corrections, there are resources, and a lot of our clients do avail themselves of them, but this is a situation where if Lemuel had access to those things, he would be rehabilitated, he would grow, and hopefully, you know, become a better citizen, and a long sentence, in this case 53 years, is not going to give him any time to demonstrate that growth by the time he gets out. The third factor that we talk about is Lemuel's decision to take responsibility by entering an open guilty plea. Again, no sentencing concessions were made by the state for this plea at all. We know from the law that an admission of fault is the first step towards rehabilitation. My dad was a preacher, so I grew up hearing this, you know, confession is the first step to get your life turned around or whatever, and Lemuel made that step here. We know that the appropriateness of courts giving some leniency on the basis of a defendant entering a guilty plea is even greater in this situation like we have here, where the plea is an open plea. It's not just somebody making a calculated decision to take a sweet deal and to get this behind them. He literally threw himself on the mercy of the court admitting guilt. Moreover, considering the impact of a sentence on the wider community, not just on my client, giving a higher sentence in a case where somebody enters an open plea only disincentivizes other defendants from entering pleas like that in the future and to just, you know, encourages people to roll the dice and go to trial. So there are reasons both for Lemuel and for the wider community that a 53-year sentence in this case is excessive. The last factor is that Lemuel's only convictions before this consisted of two misdemeanor counts of resisting. Those were in Missouri, I believe, so I don't even know that the factors were a perfect overlap between our resisting and Illinois. But he had that, and then he had a DUI, which again, not acceptable, and it's breaking the law, but certainly not completely unheard of for somebody that was in his early 20s at the time. The court, in meeting out his sentence, didn't mention Lemuel's criminal background at all. So again, there are a couple factors here where the court mentioned them and didn't give adequate weight to them. There are a couple factors that the court completely bypassed. So I'll conclude by saying that there's no question that my client broke the law. He took the life of a police officer, somebody that was on duty to protect his community. We aren't here asking to deny responsibility for that or to avoid punishment. Indeed, by pleading guilty, you start off the case, you start off the whole situation by saying, look, I did this, it was wrong, and so we're not here to contradict that at all. But we are here based on those four factors that I mentioned, saying that the sentence that was meted out to Lemuel was excessive. Again, those four factors were Lemuel's intellectual disability, his capacity to learn and to grow, and thus be rehabilitated in spite of that disability, his decision to take responsibility in an open plea, and his limited criminal background before this case arose. Accordingly, our prayer for the court is to reduce Lemuel's sentence to something that is equitable and just, or to remand for resentencing. Thank you, Mr. Harris. Questions, Justice Bowie? No questions at this time. Justice McKinney? No questions. All right, we'll come back to you in a moment for rebuttal, Mr. Harris. Ms. Theodorakis, are you ready to proceed? Yes, Your Honor. All right, you may do so. May it please the court. Good morning. My name is Jessica Theodorakis, and I represent the people. The trial court did not abuse its discretion in sentencing defendant to 53 years because the trial court explicitly found defendant's intellectual disabilities to be a mitigating factor, and defendant could have been sentenced to natural life in prison. This court should not reweigh the statutory factors that the trial court properly considered, and this is not a situation where the sentence is manifestly disproportionate to the offense. In sentencing defendant, the trial court gave significant consideration to the psychiatric and educational factors of defendant. The trial court also took into account that the treatment providers all noted that defendant knew right from wrong. Defendant chose to shoot the officer in the face and neck, and it was not by chance. In mitigation, the trial court found that defendant's intellectual functioning was at a level below his age. The trial court explicitly stated that defendant's individual capabilities was a relevant mitigating factor in determining his sentence. Counsel, was the trial court's statement focusing on sanity? Isn't that problematic? The sanity was not an issue here. No, but him knowing right from wrong, I think, is relevant in the sentencing decision. Before he talks about the factors of mitigation or this treatment providers knew that he could tell right from wrong, but he didn't use it as a factor in mitigation or aggravation, and I'll get to that in a little bit. The trial judge also found that defendants diminished abilities foreclosed on the possibility of a natural life sentence. The trial court found that defendant shot a police officer in the head and neck four times with the clear intention of killing the officer and properly sentenced defendant to 53 years in the Illinois Department of Corrections. A defendant who has been found guilty but mentally ill of an offense may receive any sentence that the same defendant could have received if he had been found guilty of the offense. Defendant will be 75 years old at the end of his 53-year sentence. Defendant is likely to spend most of his life in prison, but he was not a juvenile at the time of the offense, so neither Miller's holding nor its rationale apply here. Therefore, even though defendant may have the mental capabilities of a child, defendant's excessive sentence claim falls under the usual framework for non-juvenile offenders. Defendant argues that his sentence should be viewed as against public policy because it will deter others from entering into guilty pleas. But the issue on appeal here is whether the trial court abused its discretion. The trial court is not tasked with determining whether a sentence will deter other defendants from pleading guilty, but rather will the sentence deter others from committing the same offense. And here the trial court gave ample weight to the mitigating factors of defendant being intellectually disabled and defendant taking responsibility for the murder. The trial judge heard defense counsel's argument that defendant was capable of rehabilitation, and the trial court reviewed the pre-sentence investigation court report, which contained defendant's criminal history. But the trial court found that there were a number of factors and aggravation present. Most importantly, defendant murdered a police officer in the line of duty. The court also found that the sentence was necessary to deter others and defendant posed a risk to society. The trial court did not use defendant's sanity as an aggravating factor against him. The trial court stated that knowing right from wrong was an important consideration for the court, but it did not include defendant's sanity when it stated the factors that found present in aggravation. The legislature intended to extend certain protections to defendants suffering from disabilities, but the legislature also intended to deter the killing of police officers in the line of duty. And the trial judge had to weigh these notions with the statutory factors and aggravation and mitigation accordingly. Here, defendant's 53-year sentence was a discretionary sentence well within the sentencing parameters. The trial court had the discretion to sentence the defendant to natural life. The trial court went through a thorough analysis and gave ample weight to the mitigating factors present, mainly defendant's intellectual disability. The trial court had to weigh defendant having diminished intellectual abilities while still acknowledging the fact that the defendant shot a police officer in the head with a .38 at least four times at close range, and then defendant ran away and disposed of the gun. Officer Jonas' life was taken because defendant was afraid of being caught with a gun, and Officer Jonas' family deserves justice. Case law provides that the most important sentencing factor is the severity of the offense, and this was a very severe offense. No abuse of discretion occurred in this case. Respectfully, this court should affirm defendant's sentence. Are there any questions that I could answer at this time? I have any, Justice Mouey? No questions. Justice McKinney? No questions. Thank you. Thank you. Mr. Harris, rebuttal? Yes, Your Honor. I'll just briefly touch on a few things that counsel said. Going to Justice McKinney's question about knowing right from wrong and insanity and whether that was problematic, it would seem to me, and I haven't thought about this extensively, but it would seem that knowing right from wrong is almost a prerequisite for entering a guilty plea. So I would think in every case where there's an open plea of guilty, you knew right from wrong. And so if that's something that a trial court is sort of holding against somebody, and indeed, the court did say, you knew right from wrong, and so I'm accepting what the state said that you are a danger to the community. I would think that would apply in every case where somebody entered a guilty plea, and that would be, I mean, people would just stop entering guilty pleas, I would think, or certainly have a new disincentive for entering them if it was going to be held against them somehow that they knew right from wrong. Admitting that they were wrong would almost be held against them. My client and the court did say, well, you have an intellectual capacity that is below what your physical, your mind doesn't fit your body. But when you're talking about somebody that's an eight-year-old, I cited this in my reply brief, the normal developmental milestones for eight-year-olds are things like tying your shoes or learning to dress yourself. Now, there's no question, again, that physically my client's able to put on his clothes. But when you're talking about, well, what is an eight-year-old thinking about? The things he's thinking about, the way that his mind works, is the way somebody's mind would work at that age where they're learning to tie their shoes. That's a significant departure from what his picture shows on the Department of Corrections, what his chronological age is. The court, we know, and I think counsel mentioned this, that we presume that courts, if there's mitigation on the record, took that into account unless there's affirmative evidence that the court did not do so. In this case, we know that the trial court said, outside of the fact that God gave you at some level a limited capacity, and outside of the fact that you basically saved the state of Illinois and the victim's family from a trial, there's nothing more I can say for you. And so we know that by mentioning those and saying, well, that's all there is in mitigation, the court was discounting those other two things that I talked about in my factors, which were that my client had a capacity to grow, he had a capacity when he was exposed to education and tools to better himself or to be bettered, and also that he had that limited criminal history before this crime arose. So in this case, that presumption that's ordinarily there was rebutted by the trial court's own words. Other than that, Your Honors, if you don't have any questions, I don't have much more to say other than just to remind you again that our request is that you reduce his sentence to something that is equitable and just in light of his particular circumstances. What is your response to the state's argument that it wasn't the job of the trial court to stop future defendants from pleading guilty? It was the job of the trial court to stop future defendants from committing crimes. Well, I think that's absolutely true, and I think that that's why there's a balancing test in every case. That's why we entrust trial courts with some level of discretion in considering the factors, and we want them to get that right. But there's a balance that has to be struck between it would certainly be a deterrent if that were the only thing that we were looking at to say in every case, and indeed, in cases where you don't have a client that is disabled or something like that, you have when a police officer is murdered in the line of duty, you get this long sentence. That certainly has a deterrent effect, but when you also have somebody that basically is more than two and a half times the minimum sentence, again, they may still go to prison, but if I were in that position, and I don't intend to be, Your Honor, so just don't stress, but if I were in that position, I would just take my chances at trial because what I would learn from seeing the trial court impose a sentence like that on an open guilty plea is there's nothing to be gained by doing this or by taking responsibility. So I do think it's a balancing test. I think the court has an obligation to prevent future crimes against police officers, but also has an obligation to the community and to the administration of justice to see that we do incentivize people cooperating with authorities and admitting responsibility when they are wrong and have committed crime. All right, thank you. Mr. Harris, do you agree that the possible sentencing range normally for murder is 20 to 60, but with police officer aggravating factors that natural life was in play here, is that correct? That is correct, Your Honor. So a lot of the trial judge's statements about the defendant's mental capacity go to mitigation or reducing that sentence. Is that accurate, or do you think that's not correct? I think that that is correct. I think that when the court, basically, I think the court said, I'm not going to give you a life sentence because I think that you are disabled. At the same time, the court seemed to find, and again, sort of switching the conversation from that disability to the question of sanity, seemed to say that sanity and knowing right from wrong made him a danger to the community. Again, we don't say that the court completely ignored the but maybe perhaps because he did seem to get it mixed up with the question of sanity, the question of knowing right from wrong, the court also seemed to hold that against him insofar as he said, I find that you're dangerous. I understand this is a very difficult case and a very sad or tragic case when the defendant is in the bottom four-tenths of one percent intellectually of the population, but you have evidence the he shot somebody else in the leg because he thought they might punch him, and then he kills a police officer. When our standard is abuse of discretion, I'm just not sure what you're pointing to to say the trial court abused its discretion and we should in effect substitute our judgment and give a lower sentence. I'm not sure what exactly you're pointing to. Is it the totality, or is there one specific thing you're thinking constitutes an abuse of discretion? Well, Your Honor, those, again, I think there were two factors that the mentioned them, gave lip service to them, particularly the intellectual disability. I think that the court noted that, but also, like I said, held part of it against him. I think that the court did not mention the limited criminal history and the ability that he's not complete. Yes, this man is disabled. He's never going to be a genius. He's probably have the capacity to be taught if he has some resources and to be a productive member of society. I think that the situation here is maybe there's some way of incapacitating him. Maybe there's some way of educating him or some kind of something that exists that is more equitable, not only to Officer Jones's family and to the community, but also to this man who doesn't understand a lot of what is going on, rather than to put him in the Department of Corrections for 53 years. Maybe the appellate court, maybe the justice system is a blunt tool for something that you know, it's not in all of our power to correct that. But there is an injustice, I believe, that has taken place to Mr. Houston to serve 53 years, given his situation. I appreciate your response. We're familiar with the briefs. We'll take into account your arguments today and we'll take the matter under advisement and issue a decision in